RUMMELL et al. v. BLANCHARD et al.   (No. 7039.)

(Supreme Court, Appellate Division, First Department. May 7, 1915.)

SALES ☜☞313—LIEN OF SELLER—DELIVERY TO BUYER—ACTS CONSTITUTING.

 Under Personal Property Law (Consol. Laws, c. 41) § 137, as added by Laws 1911, c. 571, providing that the unpaid seller of goods loses his lien when the buyer or his agent lawfully obtains possession thereof, and under General Business Law (Consol. Laws, c. 20) § 125, providing that a person to whom a negotiable warehouse receipt has been duly nego-tiated acquires the title of the owner negotiating the receipt or the de-positor of the goods, a seller indorsing and delivering a negotiable ware-houseman's receipt to the buyer thereby loses a seller's lien, for the buy-er thereby obtains the ownership and control of the goods in satisfaction of the contract of sale.

 [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 870, 872, 878–884; Dec. Dig. ☜☞313.]

 Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Jacob Rummell and another against Archibald Blanchard and another, trustees in bankruptcy of Alden & Co., a bankrupt, and

another. From an order denying a motion for judgment for plaintiff on the pleadings, and sustaining defendants' demurrer to the amended complaint, plaintiffs appeal. Affirmed, with leave to plaintiffs to serve an amended complaint.

Action of replevin. In fulfillment of a contract dated January 27, 1913, for the sale or exchange of certain cases of shellac which Alden & Co. were to return at a later date, plaintiffs indorsed and delivered to Alden & Co. a negotiable warehouse receipt for the cases in question. On February 14th Alden & Co. tendered the receipt to the warehouseman and demanded new receipts running in their name. This demand was refused on the ground that the warehouse charges were unpaid, which payment Alden & Co. failed or declined to make. On their appointment, the indorsed receipt came into the possession of the defendants, trustees in bankruptcy of Alden & Co., from whom plaintiffs sought in this action to recover the goods.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Milton Dammann, of New York City, for appellants.
Joseph M. Hartfield, of New York City, for respondents.

HOTCHKISS, J. The sole question is whether plaintiffs lost their sellers' lien by indorsing and delivering the negotiable receipt to Alden & Co. Nearly 70 years ago, in the course of his opinion in McEwan v. Smith, 2 H. L. Cas. 309, Lord Campbell said (page 328):

"There can be no doubt that, after sale of the goods, the vendor has a lien on them for the price, so long as they remain in his possession, and this is a doctrine as old as any doctrine connected with the purchase and sale of goods."

It is scarcely necessary to cite authorities to show that this ancient lien existed practically unchanged at the time of the codification in this state of the law of personal property, including bills of lading and warehouse receipts, and that it depended upon possession. The learned counsel for the appellants has sought to compare it with the right of stoppage in transitu; but as Lord Campbell said in McEwan v. Smith, supra, the doctrine of sellers' lien "has no more bearing on this case than the doctrine of contingent remainders." See, also, per Cullen, J., Rosenthal v. Weir, 170 N. Y. 148, 154, 63 N. E. 65, 57 L. R. A. 527; Cooper v. Bill, 3 H. & C. 721. The underlying and radical distinction between the two lies in the fact that the right of stoppage in transitu never arises until the seller has parted with actual possession, whereas the seller's lien for his price continues only so long as possession is retained. If the buyer once gets both title and possession from the seller, at common law the lien of the latter is gone. McFarland v. Wheeler, 26 Wend. 467; Williston on Sales, §§ 511, 512, 513.

Prior to the legislation to which I have referred, it was uniformly held that bills of lading were in and of themselves muniments of title sufficient to vest title as well as possession and absolute control of the goods in him to whose order they were drawn. Per Finch, J., Moors v. Kidder, 106 N. Y. 32, 41, 12 N. E. 818; First Nat. Bank of Cin. v. Kelly, 57 N. Y. 34. These instruments, when indorsed and de-

livered for value, also vested in the indorsee to whom they were delivered, with intent to pass title, the same ownership and control of the goods as that held by him to whose order they originally ran. In this respect warehouse receipts were the same as bills of lading. Willets v. Hatch, 132 N. Y. 41, 44, 30 N. E. 251, 252 (17 L. R. A. 193).

"In the eye of the law, the person to whom the warehouse receipt or bill of lading is properly delivered or transferred for such purpose takes the possession of the goods covered by it." Per Bradley, J., Willets v. Hatch, supra.

The presumption is that Alden & Co. accepted the bill of lading in full satisfaction of their contract to sell and deliver. Whitlock v. Hay, 58 N. Y. 484. These principles have been incorporated into the Personal Property Law and the Warehouse Receipts Act (article 9, General Business Law [Consol. Laws, c. 20]). Section 137, art. 5, of the Personal Property Law entitled "Sales of Goods," provides that the unpaid seller of goods loses his lien thereon "when the buyer or his agent lawfully obtains possession of the goods." Section 125 of the General Business Law provides that "a person to whom a negotiable receipt has been duly negotiated acquires thereby," not only the title the one negotiating the receipt or the depositor of the goods, to whose order they were by the terms of the receipt to be delivered, had or could convey, but also "the direct obligation of the warehouseman to hold posssion of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

I do not think that section 143 of the Personal Property Law, entitled "Effect of sale of goods subject to lien or stoppage in transitu," or section 133 of the General Business Law, entitled "Negotiation defeats vendor's lien," have anything to do with the case. These several sections have practically the same end and purpose. The former refers to a negotiable document of title, and the latter to "a negotiable receipt," and each is to the effect that, if such an instrument has been issued, no seller's lien or right of stoppage in transitu shall defeat the rights of any purchaser for value in good faith to whom such document has been negotiated, etc. As Williston explains in his treatise on sales (page 921), these provisions were intended to protect a purchaser for value without notice after the seller had stopped the goods either by virtue of his right of stoppage in transitu or his seller's lien. It must be clear that they could not have been intended to work such a radical change in the law as would be the result if we accepted the appellants' argument that they applied to sustain a lien of a seller in the situation of these plaintiffs.

The order should be affirmed, with $10 costs and disbursements, with leave to plaintiffs to serve an amended complaint upon payment of costs in this court and in the court below. Order filed.

LAUGHLIN and DOWLING, JJ., concur. INGRAHAM, P. J., and McLAUGHLIN, J., dissent.